Good morning, Your Honors. My name is Effie Anastasio. I'm the attorney for Appellant Salinas Farms, who is a strawberry grower in Watsonville that grew approximately 27 acres of strawberries on a ranch in California, Watsonville, California, in 2020 and 2021. The strawberries were sold by Appellee Driscoll's, under Driscoll's label, Appellee Aptos Farms, a Driscoll's affiliate, put the deal together and acted as Driscoll's agent to distribute strawberry sales proceeds to Salinas Farms. The key issue in this case is whether or not these transactions that the parties engaged in were governed by the Perishable Agricultural Commodities Act, a federal law, also commonly known as PACA. Under the Perishable Agricultural Commodities Act, there is a specific provision that governs joint account transactions when the parties are engaged in a limited joint venture arrangement where they agree to share in a prescribed manner the costs, profits, or losses resulting from such transactions. And the key, if the transaction falls under that definition, then there are many numerous requirements under the PACA which are grafted onto the contract that are above and beyond what the parties specifically agree to. In this case, it was a limited joint venture arrangement because each party played a critical and indispensable role in the production and sale of the strawberries. What is the significance of the provision of the contract that expressly said it does not create a joint venture or partnership? Okay, so that particular provision, I believe, does not apply for several reasons. The first reason is that the provision does not state that it doesn't apply to a joint account transaction. The provision is very vague and what it specifically states is that the agreement does not grant farmer, which was Salinas Farms, any right, claim, or interest in the land, the plants, or the berries. And my client never claimed an interest in the land. They were on their subleasing from Aptos. They never claimed a right to the plants other than the fact they had paid for them, but they didn't claim a proprietary right in the plants. And they didn't claim to own the berries only to own the proceeds, which is a valuable property right. And so the joint venture clause also was not negotiated. No joint venture was not negotiated by my client. And so there's case law in California that's cited in the brief that says if you're going to apply a boilerplate provision such as this one, it must show that the parties intended for that to happen. Here the parties were engaged in a joint venture. Just backing up a moment, when you say it wasn't negotiated by your client, I mean, this is a fairly lengthy contract for a large commercial transaction. I mean, they signed the contract. So what exactly is the argument that they didn't negotiate that particular clause or aren't bound by it? Yes. Okay. So the parties started originally with an oral contract back in the fall of 2020, and my client planted the berries, tended to the berries. They started harvesting the berries in March of 2021. And this agreement was not presented to my client for review until June of 2020. So the parties had already been engaging in a joint venture as a matter of fact and performance long prior to the date that the contract was entered into. And then the complaint also alleges that the contract was presented in June, and my client was asked to sign it on a take-it-or-leave-it basis. In other words, there was no negotiation, no opportunity for my client to say, hey, this doesn't apply or that doesn't apply. They just said, if you want to keep receiving proceeds from the sale of the berries, sign this now. And so that in and of itself under contract law makes a joint venture clause inapplicable. In addition, I have – Does that require us to find that the clause is unconscionable under California law? Not a finding of unconscionable, just inapplicable because it was vague and ambiguous. How is it vague? I mean, it says this does not create any joint venture, it seems. Because this was a joint account transaction under PACA, which is different from a joint venture per se. And it talks about a joint venture in land, plants, or berries, which was not the joint venture. It was a joint venture to, in essence, to grow the berries, to plant, grow, harvest, market, sell the berries, and do proceeds. It wasn't – they weren't engaging in a long-term business. They had no rights to the property of one another. They were independent parties working together solely to plant, grow, harvest, and sell berries from this one particular farm for a one-time season. And that was it. And then I also argue the federal preemption argument in that – Could I just direct you on one other – a different issue for just a moment? Because your time is running out. You're down to three minutes here.  So in your complaint, you made some allegations about agency. Correct. Correct? And the district court said those allegations were basically too conclusory to demonstrate a plausibility that – what was it? Aptos Farms. Aptos was an agent of Driscoll. Correct? That's what they said, right, and I disagree with that. Well, let me ask you this. You don't really seem to take that on too vigorously in your brief. Well, essentially, there's two bases for Aptos liability. Well, there's two bases for – so Aptos was acting as Driscoll's agent, and under the PACA regulations, any actions that Aptos took on behalf of Driscoll are the acts of Driscoll, and I cite that. And under California law has an agent who violated a federal statute. They are obligated just as much as Driscoll's. Let me ask you this, though. The district court said that the allegations regarding agency were too conclusory, right? So what facts in the complaint do you allege that demonstrates that there's a reasonable probability, a reasonable – a plausible showing, you can make a plausible showing, or you make a plausible showing in the complaint, that there was an agency, a real agency in play here? What are the allegations in the complaint other than just Aptos is Driscoll's agent? Okay, so in the actual – in addition to what we say that, you know, the oral contract, in the actual PACA sublicense, it states that Aptos is acting as Driscoll's agent to enter into the sublicense agreement, to enter into the agreement with the farmer, and there are numerous provisions in the sublicense agreement itself and the attachments that say that Aptos is acting on Driscoll's behalf, including in the general provisions section where Aptos is specifically tasked to distribute the proceeds, which is where the violations actually occurred. And so if you look in the general provisions section, it states that the proceeds of sale of the strawberry are to be distributed by Aptos. Did you ask the district court for leave to further amend your complaint to flush out your allegations regarding agency? I didn't because I felt that they were right there in the complaint itself. It's right there in the actual agreement, and I cite to those provisions in my actual complaint. Okay, great. Thank you. Okay, thank you. We've taken you over your time. I was going to reserve time. There's 15 seconds left. Well, that's actually a negative 15 seconds, but we'll give you two minutes for rebuttal. Okay. Thank you so much. Mr. Waste. Good morning. May it please the court. John Jackson Waste appearing on behalf of the appellee, Driscoll's Inc. So to start off, I just want to say we're not trying to take away, nor are we in any danger of taking away the appellant's stay in court. We're just trying to make sure it's the right court, and it shouldn't be a federal court. So because I only have five minutes, I'm going to whip through some topics at the possible expense of narrative cohesion, but I wanted to start by addressing agency. Our view is pretty simple. Not only do we agree with the district court that agency was insufficiently supported with factual pleading, I would argue that even if that were not the case, even if the complaint adequately alleged, which it does not, the existence of an agent-principal relationship as between my client, Driscoll's, and Aptos Berry Farms, it wouldn't matter. And the reason it wouldn't matter is that an agent-principal relationship might mean, in theory, that Aptos, were it acting within the course and scope of its agency, could bind Driscoll's to a contract. But there's nothing in the complaint, nothing in the contracts attached to the complaint, and nothing that even springs readily to the imagination to suggest that it did so in fact. So even if Aptos were Driscoll's' agent and could bind Driscoll's to contracts, the fact is it didn't. Driscoll's is not and never has been a party to any of the contracts it issued. Well, I mean, that's correct, literally, if you look at the documents. But they really had a big hand in this, didn't they? Well, I mean, Your Honor, the fact of the matter is as the patent holder, whose patent was being licensed and then sub-licensed, the owner of the patents affected here as the entity who had a commercial relationship, there's no question, with Aptos Berry Farms, yes, they were involved in the stream. But Driscoll's had folks even on the ground, you know, at the time of the harvest. Well, Your Honor, that's not unusual in the patent context, because consider that we're talking about patented plants here. They're the patent holder dealing with even with a sub-licensee with whom they're not in privity. They want to check on the manner in which the patent is practiced to make sure that the plants are being used. Who made the payments? Which payments, Your Honor? To the farmer. My understanding of the facts. Well, you're not my understanding. You know the case well. Your Honor, Driscoll's paid Aptos, which in turn paid the plaintiff. And so, again, we find there simply isn't privity here that would support a claim under 499B4. Well, if there's a true agency, wouldn't that be sufficient? If there was a true agency, it would depend upon the course and scope of the agency and what agreements were made within that course and scope. I was just going to say, well, I'll judgmentally. Why do you say there isn't a sufficient allegation of agency? I mean, the complaint says that Picasa was told by Aptos that Aptos was an agent. Isn't that a fact that makes it plausible that there was, in fact, an agency relationship? Well, Your Honor, my issue with it, yes. I mean, it's not conclusive, but it only needs to be plausible, right? Understood. And what the complaint says is that there's a two-step process in their commercial relationship with these parties. And so, initially, again, according to the complaint, an individual named Gilbert Urena, who worked reportedly with Aptos, according to the complaint, approached Mr. Picasa, describing himself as an agent of Driscoll's and asked to get into some sort of business relationship. Well, they would later go on to define that business relationship, according to the complaint, first in an oral contract and later in this written sublicense. And the important part is Driscoll's is not a party to that, neither in name nor in substance. In the oral contract, Exhibit 1, I believe, of the complaint, reflects the terms of this alleged oral contract. It's a series of text messages, and they lay out both the contractual benefits and the contractual burdens of this oral agreement. All of the work is to be performed by either Mr. Picasa or Aptos, and all of the consideration goes 6535 to those two parties. Similarly, again, that oral agreement would later be superseded by the written sublicense. And under the written sublicense, again, the benefits and the burdens, the parties to the contracts, are explicitly Aptos and Mr. Picasa. Driscoll's is described as a third-party beneficiary, but a third-party beneficiary is by definition not a party to the agreement itself. So at the end of the day, our position is pretty straightforward. 499B4 creates liability as between one party to a perishable commodities transaction to the other if there's a failure to account or pay promptly. Driscoll's and Mr. Picasa were never parties to the same transaction. As a result, liability under that particular section cannot be found, that being the plaintiff's only claim to federal subject matter jurisdiction. The district court, in our view, got it right. And this matter, if it must be litigated at all, should be litigated in the superior court. Thank you. Thank you. Unless the court has further questions, I'll reserve the balance of my time. Okay. Thank you. Ms. Berg-James. Yes, good morning, Your Honors. May it please the Court, Lindsay Berg-James for Appellee, Aptos Berry Farms, Inc. An appellant's argument that Aptos and Driscoll's, an appellant entered into a joint account transaction under PACA's implementing regulations, simply does not apply to Aptos because Aptos is not a PACA licensee, nor is it required to be, because it doesn't meet the statutory definitions of commission merchant, dealer, or broker. And so it appears now in the appellant's reply brief and in today's arguments, appellant is now relying on an agency theory that Aptos was an agent of Driscoll's, thereby imputing statutory obligations of Driscoll's onto Aptos. And there's a couple of things wrong with that, first being the district court was correct. The allegations in the Second Amendment complaint as to agency are conclusory, and they assume the agency relationship. And counsel's comment that there's an express provision in the patent sublicense referring to Aptos as an agent of Driscoll's is incorrect. There is no such allegation, nor would they be. The relationship between Aptos and Driscoll's is contractual. Aptos has the contractual right to enter into sublicenses with growers pursuant to its license with Driscoll's. It's contractual only. And appellant simply assumes an agency relationship by saying certain things happened, so Aptos must have been Driscoll's agent. If somebody from Aptos came along and said, hey, I'm working on behalf of Driscoll and I'm their agent for purposes of what we're dealing here, it sort of signals that there might be an agency relationship, right? Certainly, Your Honor. And while we, of course, dispute the accuracy of that allegation, it is there. However, what the district court noted is that in order to create a stensible agency under California law, there have to be allegations of conduct or assertions by the principal of an agency relationship to the third party. Allegations of agency that solely relate to the alleged agent are insufficient. I can represent myself to be the agent of any one of those. Weren't there sort of allegations or statements that Driscoll had a significant role in this particular project? There are, of course, Your Honor. However, Driscoll's involvement postdated the agreement between the parties. Driscoll's did not get involved with the appellant per the allegations in the second amended complaint until they were already entered into the alleged oral contract. And so when that happens and Aptos sublicenses its right to grow berries for Driscoll's to another farmer, Driscoll's can come and participate in that process as the patent holder. However, Aptos does not go out and seek farmers as an agent of Driscoll's. It does so on its own ability based on a contract, that it has the ability to sublicense its farming operations when it needs to. The other issue with the agency argument is that appellant is trying to create statutory liability under PACA to Aptos Berry Farms as the alleged agent because the principal has alleged statutory obligations under PACA. That is not the law. An agent can bind a principal to a contract in theory, depending on what the agency is. A principal may be liable for tortious conduct by the alleged agent as its role as the principal. However, case law is clear. An agent does not take on the alleged statutory obligations of its principal simply through agency. So Aptos, who is not a PACA licensee, nor is it required to be, does not suddenly become subject to any obligations under PACA that would apply to Driscoll's. In this instance where the parties, well, Aptos and Driscoll, designed or configured this farming operation, the farmer seems to get left out. The farmer is paid. I thought PACA was designed to sort of protect the farmer, to make sure the farmer gets paid. That is correct, Your Honor. However How does the farmer get protected under PACA in this arrangement? PACA does not apply to Aptos statutorily. It does not meet any of the definitions of a commission merger, a dealer, or a broker. It is simply not subject to PACA. PACA does not apply to Aptos by definition. And so even though the goal of PACA is, of course, to protect the farmer, this is not a PACA case, because Aptos is not a PACA licensee, nor is it required to be one. Thank you. Thank you, Your Honors. Rebuttal? Yes. A couple of things of quick note, and that is I cited a number of cases in the brief about the definition of transactions under PACA. And essentially whenever there are proceeds being remitted to a party, they are, it's considered to be a PACA transaction. So here Aptos entered into a relationship with Salinas Farms and asked them to come out and pay their own money. So Salinas Farms paid to grow the plants. They paid for the plants. They paid for irrigation. They paid for the harvest. And the only compensation that they were going to get is proceeds. And the only person that could sell and obtain proceeds was Driscoll. So this transaction could not have happened without all three parties being involved. And so it is a fiction to say that Driscoll's had no involvement. And Driscoll's was involved from this transaction from the date the strawberry plants were planted until the date that the last berry was harvested, and they sold them. They were involved the whole time. They were not just a patent holder. They were the ones marketing the produce. If you look at the complaint, almost every single exhibit in the complaint has Driscoll's name on it, from the delivery receipts for the plants, from the receipts for picking up cartons, from the delivery receipts from the berries. This was start to finish a Driscoll's transaction. The contract states that Aptos was going to deliver the proceeds of sale and provide the accounting. Aptos failed to provide an accounting that met the requirements of PACA. They failed to make the disclosures that PACA requires in this type of transaction. Both parties violated federal law. Thank you. Thank you, counsel. We thank all counsel for their arguments, and the case is submitted.
judges: THOMAS, PAEZ, MILLER